UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PNC BANK NATIONAL ASSOCIATION,

        Plaintiff,                                     Case No. 15-cv-11608

v                                                    Honorable Thomas L. Ludington

MARK GETTEL, et al.,

        Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING PLAINTIFF TO SUBMIT PROPOSED JUDGMENT

Beginning on January 12, 2007, Defendants Spectrum Manufacturing, Inc. and MCMK Investments, LLC, borrowed over $1,000,000 from Plaintiff PNC Bank National Association. These loans were in turn guaranteed by Defendants Spectrum, MCMK Investments, and Mark Gettel. ECF No. 1. By November of 2014, Defendants were in default of the loan agreements. Accordingly, PNC Bank sent Defendants a notice of default and demanded full payment of the indebtedness.

When the indebtedness was not paid, PNC Bank filed the present action on May 6, 2015 alleging five counts: (1) breach of the spectrum notes; (2) breach of the spectrum notes guaranties; (3) breach of the MCMK note; (4) breach of the MCMK note guaranties; and (5) claim and delivery of collateral. *See* ECF No. 1. In their answer to the complaint, Defendants admit that the notes, amendments, and guaranties speak for themselves, and that they failed to make payments on the notes in the agreed upon time. *See* ECF No. 10. PNC Bank then filed a motion for summary judgment on August 10, 2015. See ECF Nos. 17, 19. Defendants did not

file a response. Because there are no material facts in dispute, Plaintiff's motion for summary judgment will be granted.

**I.**

The following facts set forth by Plaintiff in its Motion for Summary Judgment are not disputed by Defendants.

**A.**

On January 12, 2007, Defendant Spectrum entered into a commercial demand note with Plaintiff PNC Bank in the amount of $250,000. *See* Def.'s Mot. for Summ. J. Ex. A. The note was modified on September 28, 2007 to increase the amount to $350,000. *Id*. Also on January 12, 2007, Defendant Spectrum entered into a commercial installment note with Plaintiff PNC Bank in the amount of $105,000. *Id*. Ex. D. On February 1, 2007, Defendant Spectrum entered into a second commercial installment note with Plaintiff PNC Bank in the amount of $188,300. *Id*. Ex. B. Then, on February 22, 2008, Defendant Spectrum entered into a promissory note with Plaintiff PNC Bank in the amount of $106,700. *Id*. Ex. C. These notes together are hereinafter referred to as the "Spectrum Notes." Defendants MCMK and Gettel agreed to an unlimited guaranty of the note payment on January 12, 2007. *Id*. Ex. J.

On January 12, 2007, Spectrum and PNC Bank also entered into a security agreement. Pursuant to that agreement Defendant Spectrum granted the Bank a security interest in all of Defendants' business assets, including accounts, equipment, inventory, chattel paper, general intangibles, instruments, rents, monies, books and records, software, attachments, accessories, replacements, additions, substitutions, and all proceeds (the "Collateral"). *Id.* Ex. H. The security agreement was perfected on January 22, 2007 through the filing of a UCC Financing

Statement. *Id*. at Ex. I. The UCC Financing Statement was amended on August 4, 2011 to update the name of the secured party from National City Bank to Plaintiff PNC Bank. *Id*.

On September 28, 2007, Defendant Gettel, Defendant Spectrum and Plaintiff PNC Bank entered into a Subordination agreement. *Id*. Ex. L. Pursuant to that agreement, Gettel agreed to subordinate all indebtedness and interest thereon that Spectrum owed to him. *Id*.

On April 6, 2012, Defendant Spectrum and Plaintiff PNC entered into an amendment to the Spectrum Notes. *Id.* Ex. F. This amendment extended the maturity dates for the commercial installment notes by 6 months. *Id*. Defendant Mark Gettel consented to the amendment in his individual capacity as guarantor of the notes. *Id*.

Subsequently, on October 28, 2013, Defendant Spectrum and Plaintiff PNC Bank entered into a Forbearance and Modification Agreement. *Id*. Recognizing that the notes were in an existing state of default, Plaintiff agreed to forbear collection against either Spectrum, as the debtor, or MCMK and Mark Gettel, as guarantors. *Id*. In return, MCMK and Mark Gettel as guarantors agreed to make certain payments during the forbearance period. *Id*. This forbearance agreement was later amended on June 20, 2014. *Id*.

**B.**

On January 12, 2007, Defendant MCMK entered into a commercial installment note in the amount of $340,000. *Id*. Ex. E. This note is hereinafter referred to as the "MCMK Note." Defendants Spectrum and Gettel agreed to an unlimited guaranty of the note payment on January 12, 2007. *Id*. Ex. K.

On April 6, 2012, Defendant MCMK and Plaintiff entered into an amendment to the MCMK note whereby the maturity date of the note was extended 6 months. *Id*. Ex. G.

Defendant Mark Gettel consented to the amendment in his individual capacity as guarantor of the note. *Id*.

Subsequently, on October 28, 2013, Defendant MCMK and Plaintiff PNC Bank entered into a Forbearance and Modification Agreement. *Id*. Recognizing that the notes were in an existing state of default, Plaintiff agreed to forbear collection against either MCMK, as the debtor, or Spectrum and Mark Gettel, as guarantors. *Id*. In return, Spectrum and Mark Gettel as guarantors agreed to make certain payments during the forbearance period. *Id*. This forbearance agreement was amended on June 20, 2014. *Id*. There, the parties acknowledged that as of May 27, 2014, Defendants owed $244,129.18 on the MCMK note.

## C.

Plaintiff sent Defendants a notice of default on the Spectrum Notes and demand for full and immediate repayment pursuant to the terms of the loan documents on November 18, 2014. *Id*. Ex. M. The notice explained that the following amounts were due and payable in full, together with costs, expenses, premiums, and attorney fees: Defendants owed the following: (1) $354,648.31 on the January 12, 2007 commercial demand note; (2) $15,381.02 on the January 12, 2007 commercial installment note; (3) $23,974.72 on the February 1, 2007 commercial installment note; and (4) $24,991.01 on the February 22, 2008 promissory note. The letter explained that it was demanding payment from Defendants MCMK and Mark Gettel as guarantors as well as from Defendant Spectrum. *Id*.

That same day, November 18, 2014, Plaintiff sent Defendants a notice of default on the MCMK Note and demand for full and immediate repayment pursuant to the terms of the loan documents. *Id*. The notice explained that Defendants owed $247,527.82 on that note, along with costs, expenses, premiums, and attorney fees. *Id*. The letter explained that it was demanding

payment from Defendants Spectrum and Mark Gettel as guarantors as well as from Defendant MCMK. *Id*.

After Defendants failed to repay their obligations to Plaintiff PNC Bank, Plaintiff filed the instant suit on May 6, 2015. Plaintiff alleges that Defendants still have not repaid their obligations under the loan agreements. In their answer to Plaintiff's complaint, Defendants do not dispute these allegations. Plaintiff now moves for summary judgment against Defendants on all of its claims. Defendants have not filed a response to this motion.

**II**.

**A.**

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c).

If an opposing party fails to properly address the factual assertions of the moving party, the court may "consider the facts undisputed for the purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). As explained by the Sixth Circuit:

> This burden to respond is really an opportunity to assist the court in understanding the facts. But if the non-moving party fails to discharge that burden—for example,

> by remaining silent—its opportunity is waived and its case wagered. Nothing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record.

*Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). Because there are no material facts in dispute, summary judgment will be granted in favor of Plaintiff PNC Bank on all of its claims.

**B**.

Plaintiff's first four claims allege breach of the Spectrum notes and MCMK note by both the debtor entities and the guarantors. Defendants do not deny that they entered into the note agreements with Plaintiff. Defs.' Answer ¶¶ 1, 8-14. Defendants also do not deny that they entered into guarantee agreements on both the Spectrum notes and the MCMK note, or that they entered into the subordination agreement with Plaintiff. *Id*. at ¶¶ 16-18. Finally, Defendants admit that the Demand notes sent by Plaintiff speak for themselves, and that they failed to make payments as and when agreed. *Id*. ¶¶ 20-25.

Thus, Defendants do not deny that they entered into contracts with Plaintiff and subsequently breached those contracts. Defendants also do not contest the amounts Plaintiff claims Defendants owe it. Accordingly, summary judgment will be entered in favor of Plaintiff on Counts I-IV as a matter of law. Defendants Spectrum, MCMK, and Mark Gettel will be held jointly and severally liable for $716,766.25.

**C**.

Plaintiff's fifth claim (erroneously labeled Count VI) relates to its rights to Defendants' Collateral under the Security Agreement. Defendants again admit that the note agreements speak for themselves and that Defendants have not paid the amount demanded. Defs.' Answer ¶ 54. Defendants also admit that the Security Agreement entered into with Plaintiff and the financing

statements speaks for themselves, as does the Michigan Uniform Commercial Code. *Id*. ¶¶ 55-56. Defendants also admit that the definition of Collateral provided by Plaintiff and the attachment, perfection, and priority of Plaintiff's alleged lien speak for themselves. *Id*. ¶¶ 57-58. Defendants also neither admit nor deny Plaintiff's allegation that the Collateral has an aggregate value which is less than the indebtedness Defendants' owe to Plaintiff. *Id*. ¶ 60.

The Michigan Court of Appeals has held that security agreements are generally effective according to their terms:

> When a debtor is in default under a security agreement, a secured party has the rights and remedies provided for in that agreement and he "may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure." M.C.L.A. § 440.9501(1)…. In addition, "(u)nless otherwise agreed a secured party has on default the right to take possession of the collateral." M.C.L.A. § 440.9503….

*Gorham v. Denha*, 77 Mich. App. 264, 269-70, (1977)

Here, the security interest grants Plaintiff an interest in all of Defendants' Collateral. *See* Pl.'s Mot. for Summ. J. Ex. H. ¶ 1. The security agreement provides that upon default, Plaintiff has the right to take remedial action, as provided. *Id*. at ¶ 7. Plaintiff may exercise any and all rights and remedies available at law or equity to collect, enforce, or satisfy any debt. *Id*. Thus, under the plain terms of the agreement, Plaintiff may enter the premise on which the Collateral is located to take possession of the Collateral, attach, execute or levy the Collateral, and sell, transfer, or otherwise dispose of any Collateral. *Id.* Because the financing documents show that Plaintiff has a perfected security interest in Defendants' Collateral, and because Defendants have breached the terms of the security agreement, summary judgment will be entered in favor of Plaintiff on Claim VI, and Plaintiff will be allowed to exercise its rights under the Security Agreement.

**III**.

- 8 -

Accordingly, it is **ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 17, is **GRANTED**.

It is further **ORDERED** that Plaintiff is **DIRECTED** to submit a proposed judgment on or before **November 20, 2015** via the link located under the Utilities section of CM/ECF.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 5, 2015

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 5, 2015.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager

---